IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RITA R. RADABAUGH** | * | **CASE NO. : C-1-01-705** |
| **Plaintiff** | * | **DISTRICT JUDGE SUSAN J. DLOTT** |
| vs. | * | <u>**AFFIDAVIT OF RAMON O.**</u> |
| **CONTINENTAL CASUALTY CO.** | * | <u>**MALAYA, M.D.**</u> |
| **Defendant** | * | |

STATE OF OHIO,
SCIOTO COUNTY, ss:

Ramon O. Malaya, M.D., being first duly sworn, says that:

1. I am the treating physician of plaintiff, Rita Radabaugh.

2. This Affidavit is limited to explaining the medical records and reports prior to October 31, 2000.

3. My opinions are based on the following objective physical, radiological or electro diagnostic findings which support a significant functional impairment including: the M.R.I. of the plaintiff's cervical spine conducted on October 29, 1998, indicating "some impingement on the anterior subarachnoid space identified at the C3-C4, C4-C5, C5-C6 and C6-C7 levels. This is most pronounced at the C5-C6 level, and this appears to be secondary to an element of disk bulging and/or posterior spurring."; Doctor Goodman's Nerve Conduction and EMG report dated 10/19/98 finding left Carpal Tunnel Syndrome, left Median nerve neuropathy distally, right neurogenic Thoracic Outlet Syndrome, possible C7-C8 radicular disease; the operative record

1

dated 11/19/99; electro diagnostic studies noted in the operative report which showed a left carpal tunnel syndrome in addition to a right C7-C8 radicular pattern; the MRI of plaintiff's cervical spine conducted on October 12, 1999, finding "bulging of the annulus fibrosus with hypertrophic endplate osteophytic changes as well as hypertrophic changes of the ligamentum flavum and posterior elements at the C5/C6 level is noted causing moderate impingement of the thecal sac at this level causing a moderate degree of spinal canal stenosis. There is some mild neural foraminal stenosis due to uncovertebral spurring on the left at this level and on the left at the C6/C7 level as well. The remaining neural foramina bilaterally are widely patent"; examination reports from consultative physicians; Doctor Hawk's physical examination which noted "weakness in her external rotators in the left upper extremity as well as decreased sensation. Spurling's test causes pain at the base of the neck without radicular component; Doctor Novak's report dated August 21, 2000 which stated plaintiff "is 53 year old white female with progressive disorder affecting predominantly movement abilities for last 10 years with asymmetric onset and dystonic/myoclonic characteristics." Dystonia means neurological disorder marked by strong involuntary muscle spasm causing pain. Doctor Maniar stated in his letter dated May 16, 2000 that this doctor told plaintiff she has dystonia; physical examinations I performed on 4/7/00 and 6/30/00 wherein I observed neck spasms; (these were later confirmed by an M.R.I. of the cervical spine dated 06/19/01 revealing evidence of impingement in the anterior subarachnoid space noted at C4-C5 and C6-C7 levels consistent with some element of disk bulging and/or posterior spurring and there is some mild to moderate degree of canal stenosis identified at the C4-C5 and C6-C7 levels" and Doctor Welsh's report dated 11/15/01 indicating "persistent myelopathic symptoms, without myelopathic signs, status post

decompression for severe cervical stenosis"); I also note that even though Doctor Maniar did not find anything, he referred plaintiff to Doctor Novak which indicates he believed something was wrong. Dr. Novak believed that she had progressive disorder affecting movement abilities for 10 years with Dystonic/Myoclonic characteristics.

4. These objective findings form the basis for my opinions contained in the Attending Physician's Statement and Disability claim forms dated 04/10/00 and 8/18/00.

5. To clarify these opinions, I state that the plaintiff was totally disabled from 11/19/99 through the present.

6. On my statement dated 04/10/00 in answer to question number 11 "prognosis" indicating a restriction of "no heavy lifting pushing/pulling" and also indicating that the patient is unable to perform "all" job duties, I told her that she was not to lift more than a grocery bag which I estimate to be 10 to 20 pounds frequently and 10 pounds occasionally nor do any movements involving pushing/pulling of any weight in excess of 10 to 20 pounds. In checking "class 5" in question number 8, indicating a "severe limitation of functional capacity; incapable of minimal (sedentary) activity", I meant that she could only stand four (4) hours in an eight (8) hour day with 30 minutes to one (1) hour without interruption and sit four (4) hours in an eight (8) hour day with 30 minutes to one (1) hour without interruption and lift/carry 10 to 20 pounds.

7. To clarify my statement dated 8/18/00, I checked limitations on "stooping, bending, and lifting". It was my intention that the plaintiff was restricted from these activities, meaning that she could occasionally perform stooping or bending and she was not to lift over 10 to 20 pounds.

8. Had I been given a more comprehensive form, I would have gladly given more

3

specific instructions for limitations and restrictions of sitting/standing/walking/lifting/carrying, postural activities, physical functions, and environmental restrictions.

9. My letter to Jerry L. Buckler dated June 5, 2002, states my opinion of plaintiff's condition prior to October 31, 2000. At that time, plaintiff was severely disabled and unable to do any substantial gainful activity as a result of this disabling condition secondary to her surgical myelopathy secondary to spondylytic disease and cervical stenosis. Plaintiff was not capable of any substantial gainful activity at that time and remains so. It is also true prior to October 31, 2000. I note there was a typographical error in this letter and "myopathy" should have been "myelopathy".

10. Attached to my Affidavit is a Medical Assessment Of Ability To Do Work Related Activities (Physical) giving a more detailed profile of plaintiff's limitations and restrictions relating to her condition from November 19, 1999, through October 31, 2000 which I hereby incorporate by reference.

11. The attached Medical Assessment is based on objective findings noted above.

12. And further affiant saith not.

                                                 RAMON O. MALAYA, M.D.

Sworn to before me and subscribed in my presence this 11th day of July, 2003.

                            FRANKLIN T. GERLICH   Notary Public
                            ATTORNEY AT LAW
                         NOTARY PUBLIC, STATE OF OHIO
                         MY COMMISSION HAS NO EXPIRATION DATE
                              SECTION 147.03 R.C.

Respectfully submitted,

*[signature]*
Franklin T. Gerlach
Attorney for Plaintiff
No. 0019424
814 Seventh Street
Portsmouth, Ohio 45662
Phone 740-354-7755
Fax 740-354-6496

## CERTIFICATE OF SERVICE

A copy of the foregoing Affidavit has been sent by ordinary mail this 12th day of July, 2003, to Philip F. Brown, Attorney for Defendant, to his office at Brenner, Brown, Golian & McCaffrey Co., L.P.A., 1654 East Broad Street, Columbus, Ohio 43203.

*[signature]*
Franklin T. Gerlach
Attorney for Plaintiff

| NAME OF INDIVIDUAL | SOCIAL SECURITY NUMBER |
|---|---|
| RITA RADABAUGH | Case Number C-1-01-705 |

To determine this individual's ability to do <u>work-related activities on a day-to-day basis in a regular work setting</u>, please give us an assessment - BASED UPON YOUR EXAMINATION - of how the individual's physical capabilities are affected <u>by the impairment(s).</u> Consider the medical history, the chronicity of findings (or lack thereof), and the expected duration of any work-related limitations, but not the individual's age, sex or work experience.

For each activity shown below:

(1) <u>Check the appropriate space;</u>

(2) <u>Respond to the questions concerning the individual's ability to perform the activity;</u>

(3) <u>Identify the particular medical or clinical findings (i.e., physical examination findings, laboratory test results, x-ray evidence, history, symptoms - including pain, etc.) which support your assessment of any limitations.</u>

** NOTE: THE USEFULNESS OF YOUR ASSESSMENT RELATES DIRECTLY TO HOW THOROUGHLY YOUR MEDICAL FINDINGS SUPPORT ANY ASSESSED LIMITATION(S) IN CAPACITY.

I. Are LIFTING/CARRYING affected by the impairment(s)?  ☒ YES  ☐ NO

IF YES:

A. What medical findings support this assessment?

   Radiological reports (MRI's) and Findings of Consultants - See Affidavit

B. How many pounds can the individual lift and carry -
   <u>occasionally</u>
   (for short periods totaling not more than 2.5 hrs.) during the workday? 10-20 lbs.
   <u>frequently</u>
   (for short or long periods totaling 2.5 to 5 hrs.) during the workday? __10__ lbs.

II. Are STANDING/WALKING affected by the impairment(s)?  ☒ YES  ☐ NO

IF YES:

A. What medical findings support this assessment?

   Radiological reports (MRI's), Findings of Consultants, See Affidavit

B. How many hours can the individual stand and walk -
   <u>total</u> during an eight hour day? __4__ hours.
   <u>without interruption</u> on any single occasion during the workday? ½ to 1 hours.

MEDICAL ASSESSMENT (PHYSICAL)                                              PAGE 1

III. Is SITTING affected by the impairment(s)?   ☒ YES   ☐ NO

IF YES:

A. What medical findings support this assessment?

Radiological reports (MRI's) and Findings of Consultants - See Affidavit

B. How many hours can the individual sit -
total during an eight hour day? __4__ hours.
without interruption on any single occasion during the workday? ½ to 1 hours.

---

IV. Are POSTURAL ACTIVITIES affected by the impairment(s)?   ☒ YES   ☐ NO

IF YES:

A. What medical findings support this assessment?

Radiological reports (MRI's) and Findings of Consultants - See Affidavit and Vertigo

B. How often can the individual perform the following postural activities?

|  | Frequently | Occasionally | Never |  | Frequently | Occasionally | Never |
|---|---|---|---|---|---|---|---|
| Climb |  | X |  | Crouch |  |  |  |
| Balance |  | X |  | Kneel |  |  |  |
| Stoop/Bend |  | X |  | Crawl |  |  |  |

Occasionally: for short periods totaling not more than 2.5 hrs. during the workday.
Frequently: for short or long periods totaling 2.5 to 5 hrs. during the workday.

---

V. Are the following PHYSICAL FUNCTIONS affected by the impairment(s)?

|  | YES | NO |  | YES | NO |
|---|---|---|---|---|---|
| Seeing |  | X | Handling | X |  |
| Hearing |  | X | Fingering | X |  |
| Speaking |  | X | Feeling | X |  |
| Reaching | X |  | Pushing/Pulling | X |  |

IF YES:

A. What medical findings support this assessment?

Radiological reports, MRI's, EMG, Nerve Conduction, Findings of Consultants - See Affidavit

B. How are these physical functions affected?

---

MEDICAL ASSESSMENT (PHYSICAL)                                PAGE 2

**VI. Is exposure to any of the following ENVIRONMENTAL situations restricted as a result of the impairment(s)?**

|  | YES | NO |  | YES | NO |
|---|---|---|---|---|---|
| Heights | X | ___ | Dust | ___ | X |
| Moving Machinery | X | ___ | Noise | ___ | X |
| Chemicals | X | ___ | Fumes | ___ | X |
| Temperature Extremes | X | ___ | Humidity | X | ___ |
| Vibration | X | ___ |  |  |  |

IF YES:

A. What medical findings support this assessment?

Radiological reports and Findings of Consultants – See Affidavit

B. How do the checked restrictions affect the individual's activities?

The exposure to above environmental situation causes neck pain and worst.

---

**VII. State any other work-related activities affected by the impairment(s), and indicate how the activities are affected. What medical findings support this assessment?**

SIGNATURE & TITLE          07-11-03
RAMON O. MALAYA, M.D.      DATE

**MEDICAL ASSESSMENT (PHYSICAL)**                          **PAGE 3**