# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION
### CIVIL ACTION NO. 1:01cv00705-WOB

RITA RADABAUGH                                                    PLAINTIFF

VS.                              **OPINION AND ORDER**

CONTINENTAL CASUALTY CO.                                          DEFENDANT

On November 15, 2004, oral argument was held on defendant's motion for judgment on the merits (Doc. #9), plaintiff's cross-motion (Doc. #10) and defendant's motion to strike certain exhibits from plaintiff's submission of additional evidence (Doc. 24). Plaintiff was represented by Franklin Gerlach; and defendant was represented by Michael Heffernan. Official court reporter Joan Averdick recorded the proceedings.

## FACTS

Plaintiff, currently 58 years old, had been employed by Big Bear for over twenty-six years when, on November 19, 1999, she underwent two surgeries: a cervical discectomy[1] and fusion and a carpal tunnel release. She did not return to work after her surgeries. As part of her employment benefits, she was a participant in a long-term disability ("LTD") benefits plan Continental issued to Big Bear (the Plan).

### A.  **The Plan**.

The Plan contains a definition of disabled under either the occupation qualifier or the earnings qualifier. The parties agree that the occupation qualifier is the relevant section in this

---

[1]A discectomy is the surgical removal of herniated disc material that presses on a nerve root or the spinal cord. Fusion is a surgical procedure that joins selected bones in the neck.

1

case.  The plan provides:

Occupation Qualifier:

"Disability" means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that You are:
1. continuously unable to perform the *Material and Substantial Duties* of Your *Regular Occupation*; and
2. not working for wages in any occupation for which You are or become qualified by education, training or experience.

After the *Monthly Benefit* has been payable for 24 months, "*Disability* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that You are:
1. continuously unable to engage in any occupation for which You are or become qualified by education, training or experience.
2. not working for wages in any occupation for which You are or become qualified by education, training or experience.

Under the terms of the Plan, an employee seeking benefits must provide the date the disability began, the cause and extent of the disability, the prognosis and objective medical findings which support that the employee is disabled.  The Plan states: "[o]bjective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s)."

**B.  <u>Plaintiff's job description</u>**.

Plaintiff was employed as a manager trainee at Big Bear.  A manager trainee has the same job description as an assistant manager.  The job description from Big Bear's policy and procedure manual stated a manager must lift at least 50 pounds and operate all equipment necessary to run a store.  A handwritten job description obtained from Mark Knight, a human resource supervisor, provided a more detailed analysis of the physical demands of plaintiff's job.  Mr. Knight describes plaintiff's job as  requiring that she stand/walk eight hours of a typical

workday in increments of at least two hours at a time.  (AR 104-05).  She was also  required to

lift 20-80 pounds frequently during the day while stocking merchandise.  Her duties also

included bagging merchandise for customers, which required she lift 10-30 pounds frequently.

The job involved other physical demands including twisting her head and back, grasping and

some climbing , stooping, kneeling and crouching.  Her job also required that she have good

range of motion in her whole body.

### C. Plaintiff's claim for benefits.

In April 2000, plaintiff applied for long-term disability benefits ("benefits") from

Continental.  On the claim form, she described her injury as "neck surgery + hand surgery."  (AR

164-167).  She listed her symptoms to be "numbness in the neck and face; pain in the hand and

sensory changes."  Plaintiff submitted an April 10, 2000, physician statement from Dr. Malaya

on Continental's form.  (AR 83-84).  Dr. Malaya listed plaintiff's diagnoses as: spinal stenosis

C5-C6; post anterior cervical discectomy and fusion; left carpal tunnel syndrome; left carpal

tunnel release; cervical myelopathy.  He certified that plaintiff would be totally disabled from

November 19, 1999 until June 5, 2000.  He also restricted her from any heavy lifting or

pushing/pulling.  Dr. Malaya stated he believed plaintiff would recover to sufficiently perform

her duties on approximately June 5, 2000.  He classified plaintiff as having a  "Class 5"

impairment: "severe limitation of functional capacity; incapable of minimal (sedentary)

activity."

In May 2000, Continental requested and received plaintiff's medical records from Dr.

Malaya.  Continental also obtained a description of plaintiff's job requirements and sent the

medical records and the job description to Dr. Truchelut for a medical consultation.  Upon

3

receiving a copy of Dr. Truchelut's report noting "there are no physical, radiological or electrodiagnostic findings to support a significant functional impairment," Continental denied plaintiff's claim.   Dr. Truchelut noted, however, that he was missing some medical records.

Plaintiff appealed Continental's denial  of benefits.  As part of her appeal, plaintiff submitted additional medical evidence.  On October 31, 2000, Continental affirmed its decision to deny plaintiff's benefits.  In its letter, Continental stated that the committee concluded that there were no medical findings to support a functional impairment that would preclude plaintiff from being able to perform her occupation as a store manager trainee.

Plaintiff filed suit in Scioto County Court of Common Pleas.  Defendant removed the case to the Southern District of Ohio.  Both parties filed motions for judgment on the administrative record.

Judge Dlott found that, although Continental's interpretation of the medical evidence and conclusions drawn therefrom were not arbitrary and capricious, the notice it sent informing plaintiff of Continental's decision did not comply with a  requirement of 29 C.F.R. § 2560.503(g)(iii) that the notice inform plaintiff of what information is needed to perfect her claim.  Accordingly, Judge Dlott entered an order finding that neither party was entitled to judgment on the administrative record, but that plaintiff was entitled to submit additional evidence, created prior to October 31, 2000, in support of her claim.

Plaintiff failed to submit additional evidence by the date provided in the order. Therefore, Judge Dlott entered an order and judgment denying plaintiff's motion for judgment and granting defendant's motion.  Approximately one month later, Judge Dlott directed the clerk to reopen the case and accept plaintiff's supplemental memorandum with attachments.

The defendant sent the additional evidence submitted to its consulting physician, Dr. Truchelut, for review.  Dr. Truchelut provided an analysis of the records and ultimately opined that the records did not provide objective medical evidence of a post-surgery disability.

The case is now before this court to determine whether the new evidence establishes that Continental's decision to deny benefits was arbitrary and capricious.

## ANALYSIS

### A. ERISA

It is uncontested that this case is governed by ERISA and that the standard of review is arbitrary and capricious.

### B. Motion to Strike Exhibits

The court did not rely on documents 15, 16, 17 or 23 in reaching its decision. Accordingly, defendant's motion to strike these exhibits is denied as moot.

### C. Continental's Denial was Arbitrary and Capricious.

In her order, Judge Dlott specifically stated that Continental made its decision without considering the records from plaintiff's surgeries.  The additional evidence submitted included the operative record of plaintiff's anterior cervical discectomy and fusion at the C5-C6 level and left carpal tunnel release.   This document is objective evidence that plaintiff suffered from cervical spinal stenosis and left carpal tunnel syndrome.

The surgery was intended to relieve plaintiff from her symptoms of pain. As the additional evidence demonstrates, plaintiff's symptoms were not relieved by the operation and she continued to suffer from cervical pain.  On April 25, 2000, plaintiff saw Dr. Welsh and he noted that plaintiff continued to be very symptomatic and he found her to be "exquisitely tender,

and hypersensitive throughout all the muscles of the limbs, neck and back." He noted that the surgery did not always relieve a patient's symptoms of pain and that plaintiff may be one that surgery does not help.

On August 21, 2000, Dr. Novak completed an examination on plaintiff finding pinprick, temperature and vibration was decreased distally below the ankles.  On October 17, 2000, Dr. Hawk had a follow-up appointment with plaintiff, eleven months post-surgery, and found she had tenderness to the neck upon palpitation that he found contributed to her pain.

Dr. Malaya submitted an affidavit outlining plaintiff's treatment over the years for her severe pain.  He relied in part on his own objective finding of neck spasms during his examination of plaintiff on both April 7, 2000 and June 30, 2000.   Dr. Malaya also stated in his affidavit that he instructed plaintiff on April 10, 2000, not to lift more than 20 pounds frequently and 10 pounds occasionally and not to push/pull any weight in excess of 20 pounds.  He explained that he did not write these restrictions on his attending physician statement because the form did not request such information.  He checked "class 5" indicating "severe limitation of functional capacity; incapable of minimal (sedentary) activity." and meant that plaintiff  "could stand for four (4) hours in an eight (8) hour day with 30 minutes to one(1) hour without interruption and lift/carry 10 to 20 pounds."

On July 11, 2003, Dr. Malaya completed a medical assessment giving a detailed profile of plaintiff's restrictions for the time period from November 19, 1999 to October 31, 2000.  In that assessment, Dr. Malaya provided the following limitations: plaintiff should not lift or carry more than 20 pounds occasionally and 10 pounds frequently; she could stand/walk a total of four (4) hours in an eight (8) hour day and sit of four (4) hours in an eight hour day.

6

In addition, even Dr. Truchelut, Continental's consulting physician, found "Considering what is known about the claimant's cervical disk disease, some occupational limitations seem reasonable, such as avoidance of postures which would require extremes in cervical ranges of motion, i.e. climbing and crawling."  He did not, however, provide a medical assessment.

Plaintiff's job at Big Bear required she lift up to 80 pounds.  Prior to her surgery, plaintiff had been off work for a period of time, tried to return with a restriction not to lift more than ten (10) pounds, but she was told that Big Bear has a policy that precludes an employee from returning to work with any restrictions. (Exhibit 38).  The medical evidence is certainly clear that plaintiff could not and can not  lift 80 pounds.  Dr. Malaya has submitted an affidavit explaining that he told plaintiff in May 2000, not to lift more than twenty (20) pounds.  That restriction has not been lifted.  Since plaintiff could not lift 20-80 pounds frequently as required to stock merchandise, she could not perform the material and substantial duties of her regular occupation.   Accordingly, the court finds that plaintiff  is entitled to disability benefits for the twenty-four (24) months after the elimination period.

In summary, in the view of this court, the operation itself, which removed plaintiff's cervical discs, is objective evidence of an injury.  An MRI or CAT scan would have revealed that she has no discs at the C5-C6 level and had a fusion.  The treating physicians' muscle spasm findings and pinprick tests are also objective tests and yielded objective findings.  Therefore, Continental's determination that plaintiff could frequently lift 80 pounds as required by her "own occupation" was arbitrary and capricious.

During oral argument, counsel agreed that the issue of whether plaintiff meets the definition of  "any occupation" is not presently before the court because Continental has not

performed an administrative review of that issue. Accordingly, the court does not present an opinion on whether plaintiff meets the definition of "any occupation" as is required to obtain benefits after the twenty-four month "your occupation" disability ends.

Therefore, the court having been otherwise sufficiently advised,

**IT IS ORDERED** that plaintiff's motion for judgment on the administrative record (Doc. #10) be, and it is, hereby **granted**; defendant's motion for judgment on the merits (Doc. #9) be, and it is, hereby **denied**; and that defendant's motion to strike exhibits (Doc. #24) be, and it is, hereby **denied as moot.**

This 22nd day of November, 2004.



Signed By:

**_William O. Bertelsman_** WOB

**United States District Judge**

8